### ATLANTIC STEVEDORING CO. et al. v. LOWE, Deputy Commissioner of United States Employees' Compensation Commission.

#### No. 7939.

District Court, E. D. New York.

March 10, 1937.

Alexander, Ash & Jones, of New York City (E. Ash and Paul Jones, both of New York City, of counsel), for complainants.

Leo J. Hickey, U. S. Atty., and C. Wilson, Asst. U. S. Atty., both of Brooklyn, N. Y., for Samuel S. Lowe,

G. I. McCarthy, of New York City, for B. Svendsen.

GALSTON, District Judge.

The plaintiffs seek to enjoin the payment of an award made by the defendant in a compensation case and to have the order vacated.

It appears that Martin Svendsen, in the course of his employment as a stevedore of the Atlantic Stevedoring Company, received accidental injuries on January 23, 1930, which on January 29, 1930, resulted in his death. Shortly thereafter, on February 21, 1930, his brother filed a notice of accident in the office of the deputy commissioner. On February 24, 1930, the Claims Department of the United States Employees' Compensation Commission by letter requested advice as to decedent's dependents, the Atlantic Stevedoring Company, employer, and the insurance carrier having filed notice that the claim would be controverted on the ground that a third party was involved and also raising the question as to the de-

pendency of the claimant. On April 4, 1930, the decedent's brother filed a claim on behalf of the decedent's mother.

The deputy commissioner sent to an attorney who had sought from him information regarding the status of the claim a blank form for the election of the claimant to sue a third party; this attorney was also informed that no claim had been filed bearing the signature of the decedent's mother. A request, too, was made for proof of the dependency of the decedent's mother. Finally, after other communications, there was filed with the deputy commissioner, on December 6, 1930, a claim signed by the Norwegian consul on behalf of the mother. Then on March 31, 1931, the attorney, on behalf of the mother, filed an election to sue the third party. The insurance carrier on June 12, 1931, requested information from the attorneys as to the status of the third party action. No reply having been received to this letter, nor to one of similar purport written to the attorneys on August 21, 1931, the insurance carrier wrote to the Norwegian consul for the information. Finally, after repeated efforts, it was learned by a letter from the Norwegian consul that an action had been commenced against the third party by service upon the agent of the steamship company on January 20, 1932. Inquiries were periodically made by the carrier of the Norwegian consul concerning the status of the action. Information was also requested from the attorney. Finally, on August 24, 1932, the attorney wrote the carrier that it had been deemed advisable to discontinue the third party action and that they were "ready to proceed with the claim under the U. S. Compensation Law." It was not, however, until October 13, 1932, that the motion to set aside service in the third party action was granted.

Then ensued another lapse to September 15, 1933, at which time a hearing was held before the deputy commissioner. The claim was controverted on the ground that no dependency of the mother had been proved and on the further ground that an election to sue the third party having been filed and the prosecution having been unduly delayed, the right of the insurance carrier to subrogation had been unduly prejudiced.

On the adjourned and second hearing before the deputy commissioner, held November 13, 1934, evidence was adduced as to the dependency of the claimant.

The record before the deputy commissioner establishes the fact that periodically during the two-year period following the date of the death of the decedent vessels owned by the owner of the steamship Hyacinthus, on which vessel the decedent had sustained his injuries, had arrived in the port of New York, stayed the usual time, and departed therefrom. It would follow then that such vessels could have been attached in an action by the next of kin of deceased had their arrivals been within his knowledge.

On July 1, 1935, the deputy commissioner made and filed an order awarding compensation to the claimant as the mother of the deceased. This award was vacated by this court and the claim remitted to the deputy commissioner "for such proceedings as he may deem necessary under the provisions of the Longshoremen's and Harbor Workers' Compensation Act [33 U.S.C.A. § 901 et seq.]."

Accordingly a further hearing was held before the deputy commissioner, who, on April 14, filed an order awarding death penalties to the claimant.

It is this last-mentioned order which this complaint seeks to have vacated.

Section 130 of the Decedent Estate Law, chapter 13, of the Consolidated Laws of the State of New York, reads as follows: "Action by executor or administrator for negligence or wrongful act or default causing death of decedent. The executor or administrator duly appointed in this state, or in any other state, territory or district of the United States, or in any foreign country, of a decedent who has left him or her surviving a husband, wife, or next of kin, may maintain an action to recover damages for a wrongful act, neglect or default, by which the decedent's death was caused, against a natural person who, or a corporation which, would have been liable to an action in favor of the decedent by reason thereof if death had not ensued. Such an action must be commenced within two years after the decedent's death. When the husband, wife or next of kin, do not participate in the estate of decedent, under a will appointing an executor, other than such husband, wife or next of kin, who refuses to bring such action, then such husband, wife or next of kin shall

be entitled to have an administrator appointed for the purpose of prosecuting such action for their benefit."

Pending the trial a motion was made for an injunction to restrain the payments under the award. In granting that motion Judge Campbell found that "irreparable damage will be suffered by the complainants if they are compelled to comply with the order of the Deputy Commissioner of the U. S. Employees Compensation Commission for the Second Compensation District, due to the fact that they have lost the rights by subrogation in which an action might be maintained against the third party alleged to be a wrongdoer and that until the time the said rights expired claimant had an action pending having elected to sue the third party alleged to be the wrongdoer."

The record before me presents no material facts which were not presented to Judge Campbell.

■ I, too, must reach the conclusion that the complainants have been prejudiced by the loss of the right of subrogation arising from the claimants' election to sue the third party. Title 33 U.S.C. § 932 (33 U.S.C.A. § 932), gives the right of election to the employee on notice to the deputy commissioner to receive compensation or to recover damages against some person other than the employer who is liable in damages. The effect of this provision, and of other provisions in the same section, was considered in American Lumbermen's Mutual Casualty Company of Illinois v. Lowe, Deputy Commissioner (C.C.A.) 70 F.(2d) 616, 618, and it was pointed out that there is nothing in the section which suggests that bringing an action against the third party amounts to a final election, but the court said: "Nor, in the absence of such delay as will prevent the employer or its carrier from effectively availing themselves of their rights against the third person by way of subrogation, would there seem to be adequate reason for depriving a person entitled to compensation of the right to discontinue her action and seek compensation under the statute. Such a locus pœnitentiæ is ordinarily available, where separate remedies against different persons exist."

■ Conversely, a delay which would prevent the employer or its carrier from proceeding in the assertion of rights by subrogation against a third party should bar or estop such person from claiming compensation.

When the state court action was instituted against the third party, the carrier had reasonable grounds for believing that no claim for compensation would be made until such action was disposed of and then only in the event that the judgment would not equal the amount which would be awarded by way of compensation.

On January 20, 1932, the third party action was begun by the service of a summons and complaint, which on October 13, 1932, was vacated. Meanwhile, on January 29, 1932, the time under the statute of limitations for bringing the action against the third party, expired. Obviously the effect was to prevent the insurance carrier from ever proceeding against the third party.

But the claimant contends that pursuant to the provisions of section 19 of the Civil Practice Act the two-year period was extended because of the nonresidence of the third party. The third party, the British & South American Steam Navigation Company, was a British corporation. The record in this case shows that during the two-year period a number of vessels belonging to the British & South American Steam Navigation Company were within the jurisdiction of the state of New York or of this court, having arrived in the port of New York. It is urged by the claimant that she had no knowledge of the ownership of these vessels nor of their arrivals in the port of New York and relies upon The Slingsby (C.C.A.) 120 F. 748, 753, to excuse her inactivity. It is true that in that case Judge Lacombe wrote: "Evidence was put in showing that several other vessels belonging to the same owners were from time to time in the port of New York and might have been attached in such an action. But it is not shown that libelant knew what vessels R. Ropner & Co. owned, and we are satisfied that he was under no obligation to find out, and to keep track of their movements from port to port."

But the Slingsby Case is not pertinent here, for in the Slingsby Case no question of the right of subrogation was involved. The parties in the Slingsby Case were the

libelant suing for personal injuries and the steamer libeled, so that it could very well be that the libelant, as Judge Lacombe wrote, "was under no obligation to find out, and to keep track" of the movements of the other vessels owned by the owner of the Slingsby.

 Thus it does appear that the acts and delays of the claimant did result in prejudice to the assertion of the carrier's rights. The complainants are therefore entitled to the relief prayed for in the bill of complaint.

If this opinion is not in sufficient compliance with the rule requiring findings of fact and conclusions of law, submit findings of fact and conclusions of law in accordance therewith.